**In the Matter of the Petition of O. L. SCHMIDT BARGE LINES, INC., as owner of the MOTOR VESSEL MARY R, for exoneration from or limitation of liability.**

**Nos. 71–1498 to 71–1500.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 27, 1972.

Decided March 7, 1973.

Rehearing Denied April 9, 1973.

*See also* Note, The United States Courts of Appeals: 1971–1972 Term Criminal Law and Procedure, 61 Geo.L.J. 275, 379–81 (1972).

Paul McCambridge, Philip H. Corboy, Chicago, Ill., for appellant.

Joseph V. McGovern, Michael A. Snyder, Chicago, Ill., for appellee.

Before KILEY and STEVENS, Circuit Judges, and ESCHBACH, District Judge.*

ESCHBACH, District Judge.

A petition was brought in the district court by O. L. Schmidt Barge Lines, Inc. ("Schmidt"), as owner of the tugboat M/V MARY R, for exoneration from or limitation of liability for loss, damage and injury arising out of a collision on the Little Calumet River between the barge in tow of the MARY R and a motorboat owned and operated by Joseph Moss. Claims for damages for personal injuries were filed in limitation proceedings by Moss and the other occupants of the motorboat who survived the collision (Dean Steglich, Peter O'Malley and Lawrence Regan). Claims for wrongful death were filed by the Administrator of the Estate of George O'Donnell, Jr., an occupant of the motorboat who was drowned in the accident, against both Schmidt and Moss. After a trial on the issue of liability before the district court sitting in admiralty, a decree was entered exonerating Schmidt from liability for the casualty. Judgment was also entered granting recovery for the decedent's estate on the issue of liability on its cross-claim against Joseph Moss.

Moss appeals in No. 71–1499 from the judgment of the trial court finding him liable for the collision and, in No. 71–1500, from the decree exonerating Schmidt. The latter appeal originally included claimants Steglich, O'Malley and Regan, but was later dismissed as to them pursuant to their motion. O'Donnell's estate appeals only from the decree of exoneration in favor of Schmidt. (No. 71–1498). We affirm.

The collision occurred at about 9:00 P.M. on August 19, 1968, immediately west of the Indiana Avenue Bridge over the Little Calumet River at Chicago, Illinois. The MARY R was proceeding down the river in a westerly direction pushing in front of it Barge No. 26, a 254-foot tank barge which was empty at the time. As the MARY R approached the Indiana Avenue Bridge, its speed was slowed to enable passage of the 50-foot wide barge through the south draw of the bridge, a passage having a width of about 62 feet. The towboat maintained a speed of about three miles per hour until the time of the collision. The pilot of the MARY R used a searchlight to illuminate the banks of the river and the pilings protecting the south draw of the bridge. Gerald Toomey, a deckhand

---

* District Judge Jesse E. Eschbach of the Northern District of Indiana is sitting by designation.

who was acting as lookout, stood on the forward end of the barge with his back to the pilot and gave flashlight signals to guide the barge through the opening. As the head of Barge 26 cleared the east pile clusters of the south draw, Toomey turned and walked aft on the barge to take down a warning flag so that it would not hit the underside of the bridge as the barge passed through the draw.

As the MARY R was descending the river toward the Indiana Avenue Bridge, the 16-foot outboard motorboat which Moss had purchased only two days earlier was docked at the Seaways Marina gas dock which was located on the north bank of the river approximately 130 feet west of the Indiana Avenue Bridge. Moss and his companions had stopped there shortly after 8:00 P.M. to purchase some beer in a tavern at the marina. Moss had never owned a boat prior to August 17, 1968, and had no significant experience operating a boat. He had taken the new boat out on only one prior occasion, on August 18, the day before the accident, and had been through the Indiana Avenue Bridge on one round trip. The boat contained no life preservers or buoyant apparatus of any kind.

Moss and Steglich remained in the boat while O'Malley, Regan and O'Donnell went up to the tavern at Seaways Marina. When the three young men returned some time later, Moss departed from the gas dock and proceeded toward the south draw of the bridge on a course roughly parallel to Indiana Avenue. Prior to the collision, a witness on the north shore near the marina observed the starboard and bow running lights of the barge as it began emerging from the draw of the bridge. The small boat collided with the front of the barge just as the latter was clearing the protective pile cluster at the northwest corner of the bridge draw. The occupants of the motorboat jumped out just prior to contact and all but O'Donnell reached safety.

The trial court found that Moss was guilty of a number of violations of the Rules of the Road for Western Rivers, 33 U.S.C. § 301 et seq., and the Pilot Rules for Western Rivers, 33 C.F.R. § 95.01 et seq. The court found that these violations constitituted gross fault in the aggregate and were sufficient in themselves to account for the collision. As to the conduct of the MARY R, the court found no violation of Rule 24(b) of the Rules of the Road, 33 U.S.C. § 349(b), which provides that when a vessel is approaching a blind bend and has a tow ahead of her, "[W]hen the head of such tow is within six hundred yards of the bend . . . [she] shall give a signal by three distinct blasts of her whistle." It was further found that even if Toomey had been positioned in the most favorable possible place to observe approaching craft as the barge emerged from under the bridge, he could not have seen or warned Moss in time to prevent the collision.

 In an admiralty case, as in the ordinary civil case under Rule 52(a) of the Federal Rules of Civil Procedure, the findings of the trial court may not be set aside unless they are clearly erroneous. Commercial Transport Corp. v. Martin Oil Service, Inc., 374 F.2d 813, 817 (7th Cir. 1967); In re Rapp's Petition, 255 F.2d 628, 632 (7th Cir. 1958). Although appellants challenge a number of the court's conclusions of law, the main thrust of their argument on appeal is that the evidence at trial did not support the court's decision as a factual matter. We find nothing in this record to indicate clear error in the findings of the experienced trial judge who heard the evidence and observed the witnesses in this case.

 An examination of the record shows that the pilings and center pier of the bridge effectively obstructed the view which a lookout stationed at the head of the barge would have had of the Moss boat until seconds before the collision. The precise amount of time can be estimated at somewhere from one to

five seconds on the basis of evidence as to the location at which the collision occurred (five to twenty feet west of the northwest pile cluster) and the testimony of the occupants of the motorboat that they did not see the barge until two to five seconds before the collision. Under these circumstances, the finding that Toomey's absence from the head of the barge was immaterial and could not have been a contributing cause of the collision is substantially supported by the evidence. Therefore, even if there was a breach of the duty to keep a proper lookout, the fact that a lookout could not have prevented the collision precludes a finding of liability on that basis. Tidewater Associated Oil Co. v. United States, 60 F.Supp. 376 (S.D.Calif.1945); The Bouker No. 2, 254 F. 579 (2d Cir. 1918); The Transfer No. 21, 248 F. 459 (5th Cir. 1918). Appellants contend that a failure to keep a proper lookout is a statutory fault which casts upon Schmidt the burden, under the rule of The Pennsylvania, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148 (1874), of showing "not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been." *See* Ulster Oil Transport Corp. v. The Matton No. 20, 210 F.2d 106 (2d Cir. 1954); Gulf Oil Corp. v. The Socony No. 16, 162 F.2d 869 (2d Cir. 1947). *Compare* Anthony v. International Paper Company, 289 F.2d 574 (4th Cir. 1961). As indicated above, however, the court specifically found that such a showing had been made by stating that "[e]ven if a lookout were required on the starboard forward corner, he could not have seen or warned Moss in time to prevent the collision."

■ Appellants attempt to attribute fault to the MARY R for not sounding a danger signal as required by Rule 24(a) of the Rules of the Road for Western Rivers, 33 U.S.C. § 349(a), or otherwise warning Moss prior to the collision. Rule 24(a) provides as follows:

If, when steam vessels are approaching each other either vessel for any reason fails to understand, or regards as unsafe, the course or intention of the other, the vessel in doubt shall immediately so signify by giving several short and rapid blasts of her whistle, at least four, the danger signal.

We agree with Schmidt that the rule applies only to those situations where a vessel is aware of "the course or intention of the other vessel". In light of the inability of the MARY R to see the Moss boat until it was too late to avoid the collision, any warning would have been futile and the rule requiring a danger signal is inapplicable.

■ The trial court found that the MARY R did not violate Rule 24(b), 33 U.S.C. § 349(b), which requires a bend signal to be sounded "within 600 yards" of a blind bend in the river. The court interpreted the rule as not prescribing a minimum distance within which such a signal must be sounded and that the practice of the pilot of the MARY R to sound a bend signal as soon as he cleared the Indiana Avenue Bridge was "both reasonable and prudent". It is unnecessary, however, to decide whether the trial court's interpretation of the language "within 600 yards" was correct or whether, given that interpretation, the finding of reasonableness was erroneous. The court in its conclusions of law stated as follows:

There are many cases where the vessels failed to blow a bend signal at all and were found at fault for colliding with vessels rounding bends, but none of these cases is analogous, because this collision did not happen at a bend, and Moss was never around the bend at any time when the Mary R was within 600 yards of the bend. *The law did not contemplate the sounding of a signal for the benefit of Moss, only for the benefit of vessels below the bend.* (Emphasis supplied.)

We agree that the bend signal rule imposed no duty upon the MARY R with respect to Moss.

The question of the applicability of the bend signal rule to the facts of this case is controlled by principles recently stated by the Supreme Court in Union Oil Company of California v. The Tugboat San Jacinto, 409 U.S. 140, 93 S.Ct. 368, 34 L.Ed.2d 365 (1972). In that case, the SS SANTA MARIA and the tugboat SAN JACINTO were approaching on opposite sides of a well-defined and relatively narrow channel. Although the visibility in the direction in which the SANTA MARIA was headed was almost two miles, there was heavy fog to the left. The SAN JACINTO emerged from the fog bank only 900 feet away; executing a U-turn in front of the SANTA MARIA which caused a barge in the tow of the SAN JACINTO to crash into the bow of the SANTA MARIA. The Court of Appeals held that the SANTA MARIA violated Rule 16 of the Inland Rules of Navigation, 33 U.S.C. § 192, "the half-distance rule" which requires a vessel to travel in conditions of fog at a speed which will enable it to come to a standstill before it would collide with a vessel it could see through the fog. The Supreme Court reversed the judgment for half-damages against the SANTA MARIA which the Ninth Circuit had based on such statutory fault. The Court found implicit in the rule the assumption that vessels can reasonably be expected to be traveling on intersecting courses, and went on to state that:

> "There is no evidence in the record suggesting that the speed of the tanker would have prevented her from coming to a complete halt within half the distance of sighting a vessel that was either proceeding on a remotely foreseeable intersecting course or else being overtaken by her. The tug emerged from a fog bank only 900 feet from the tanker on a course and for reasons that no seaman could, under the circumstances, have anticipated." 93 S.Ct. at 372.

The Court held that "fault based on the half-distance rule must have some relationship to the dangers against which that rule was designed to protect". Therefore, liability rested on the SAN JACINTO alone.

■■ Likewise, in the instant case, fault based upon the bend signal rule must have some relationship to the dangers against which that rule was designed to protect. The rule clearly applies only to situations in which a steam vessel "is nearing a bend in a channel where, from the height of the banks or other cause, a steam vessel approaching from the other direction cannot be seen for a distance of six hundred yards. . . ." 33 U.S.C. § 349(b). The rule was designed to protect against the danger of collision between vessels whose vision of each other is obscured by a bend in the channel. There was no bend in the Little Calumet River which obscured the Moss boat from the view of the MARY R. The obstruction was the Indiana Avenue Bridge. Appellants do not contend that the bend signal rule should be interpreted to require such a signal six hundred yards from every obstruction to a full view of the channel ahead. They assert merely that the signal should have been sounded above the Indiana Avenue Bridge for the bend in the river some 400 yards downstream from the bridge. However, we cannot agree that the failure to timely sound such a signal to warn vessels on the other side of the bend results in fault for collisions with vessels hidden from view by a bridge which is fortuitously situated within 60 yards of the bend. If any duty is owed to approaching vessels which may be hidden by a bridge, the requirement of a signal should not be determined by whether there happens to be a bend in the river nearby. Therefore, the district court was correct in holding that the MARY R was not at fault for not sounding a bend signal before passing under the Indiana Avenue Bridge. Under *Union Oil, supra,* the collision between the Moss boat and the MARY R had no relationship to the dangers against which the bend signal rule was designed to protect.

Appellants urge that the MARY R should not be exonerated from liability on the basis of the rule that "where the active fault of one vessel so flagrantly and heavily outweighs the passive faults of omission of the other vessel, the interests of justice are best served by condemning the more culpable vessel completely". Cia. Maderas, etc. v. The Queenston Heights, 220 F.2d 120, 123 (5th Cir. 1955), cert. denied, 350 U.S. 824, 76 S.Ct. 52, 100 L.Ed. 736 (1955). Accepting appellants' contention that such a rule, though well-established, must be carefully applied, we find that the evidence supports the trial court's finding that the fault of Moss was "glaring" and was sufficient in itself to account for the collision. Discussion of the so-called "major-minor fault rule", however, is unnecessary because there is ample evidence in the record to support the exoneration of Schmidt even under the strictest standards required by the rule of The Pennsylvania, supra. Since there was no fault on the part of the MARY R for not sounding a bend signal, Schmidt was not required to make a showing that such a fault could not have been a cause of the collision. The only remaining faults urged by appellants arise out of the alleged failure of the MARY R to keep a proper lookout. Although the trial court cited the Cia. Maderas case, supra, Judge Marovitz specifically found, on the basis of substantial evidence, that a properly stationed lookout "could not have seen or warned Moss in time to prevent the collision". Thus, we need not consider whether the lookout was inadequate, or whether an inadequate lookout would constitute a "major" or "minor" fault. Further inquiry is foreclosed by the finding that no causal connection existed between any such fault and the collision. That finding, not being clearly erroneous, satisfies the strict requirements of The Pennsylvania.

The judgments appealed from are affirmed.

Affirmed.