**FEEDER LINE TOWING SERVICE, INC., Plaintiff-Appellee,**

v.

**TOLEDO, PEORIA & WESTERN RAILROAD COMPANY, Defendant-Appellant.**

**No. 75–2160.**

United States Court of Appeals, Seventh Circuit.

Argued April 23, 1976.

Decided Aug. 12, 1976.

John E. Cassidy, Jr., Peoria, Ill., for defendant-appellant.

Robert V. Dewey, Peoria, Ill., Clayton J. Swank, III, Greenville, Miss., for plaintiff-appellee.

Before CASTLE, Senior Circuit Judge, TONE, Circuit Judge, and GRANT, Senior District Judge.*

CASTLE, Senior Circuit Judge.

Proceeding southbound on the Illinois River at Peoria, Illinois, in the dark hours of the morning of June 10, 1972, the M/V *Polliwog*, owned by plaintiff Feeder Line Towing Service and towing nine barges, collided with the protective system of a bridge owned by defendant Toledo, Peoria & Western Railroad. The collision resulted in damage to the lead barge, its cargo, and the bridge's protective system. After a bench trial, the district court found defendant 65% negligent and plaintiff 35% negligent and ordered defendant to pay plaintiff $36,191.92 in damages. Defendant appeals the district court's finding of negligence against it and plaintiff asks this court to dismiss defendant's appeal for failure to file a timely notice of appeal.

## I.

Plaintiff argues that this appeal should be dismissed for failure to file a timely notice under Fed.R.App.P. 4(a). Judgment was entered against defendant on July 17, 1975, and on September 15, 1975, the district court denied defendant's motion to open, alter, or amend. Fifty-nine days later, on November 13, 1975, defendant moved to extend time for filing notice of appeal. The district court granted the motion and extended the time through November 14, 1975. Defendant thereupon filed notice of this appeal.

Rule 4(a) provides that notice of appeal in a civil case (including a civil action which involves an admiralty claim) must be filed within 30 days of the entry of the judgment appealed from. However, rule 4(a) further provides that "Upon a showing of excusable neglect, the district court may extend the time for filing the notice of appeal by any party for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this subdivision." Plaintiff insists that the district court could not properly extend the time in the instant case since no grounds for "excusable neglect" existed. We disagree.

In its motion, defendant in essence stated that its failure to file timely notice was due to its counsel's opinion that 28 U.S.C. § 2107 controlled the time of filing in a suit in admiralty. Section 2107 provides that in any suit in admiralty "the notice of appeal shall be filed within ninety days after the entry of the . . . judgment or decree appealed from." Defendant now concedes that under 28 U.S.C. § 2072, rule 4(a) supersedes section 2107. See *Hansen v. Trawler Snoopy, Inc.*, 384 F.2d 131, 132 (1st Cir.

---

* The Honorable Robert A. Grant, United States Senior District Judge for the Northern District of Indiana, is sitting by designation.

1967); *Motteler v. J. A. Jones Construction Company,* 447 F.2d 954 (7th Cir. 1971). But during the period in question, defendant believed otherwise. Although not labeled as such, we construe defendant's statement in its motion that it believed section 2107 to be controlling as setting forth grounds for the district court to find "excusable neglect" under rule 4(a). And although the district court did not explicitly so state, it necessarily found "excusable neglect" since that was the only possible basis for its decision.

Plaintiff argues that defendant's erroneous interpretation of the law governing the time of filing cannot constitute "excusable neglect." Rather, it argues "excusable neglect" can only be found in those situations where the reason for the delay in filing is the failure to learn of the entry of judgment, citing the advisory committee note to the 1966 amendment to former rule 73(a), the predecessor of rule 4(a).

■ We, however, do not read such a limitation into the clear language of rule 4(a). Prior to the 1966 amendment, old rule 73(a) provided that the time for filing could be extended 30 days "upon a showing of excusable neglect based on a failure of a party to learn of the entry of the judgment." See 9 J. Moore, Federal Practice ¶ 203.24[2], at 773. In 1966 this language was amended to read simply "upon a showing of excusable neglect." See 9 J. Moore, *supra,* ¶ 203.21, at 761. Rule 4(a) continues that wording. Although the committee note to the 1966 amendment states that "no reason other than failure to learn of the entry of judgment should *ordinarily* excuse the party from the requirement that the notice be timely filed" (emphasis added), we are of the opinion that the import of the 1966 deletion of that very restriction from the text of the rule is obvious. After 1966, a finding of "excusable neglect" is no longer limited to the situation where the party has not learned of the entry of judgment, but rather is open to "a number of other situations in which tardiness is excusable and in which it is unfair to dismiss an appeal because of late filing of the notice."

Stern, *Changes in Federal Appellate Rules,* 41 F.R.D. 297, 298 (1966); see generally, 9 J. Moore, *supra,* ¶ 204.13[1], at 967–74.

■ Plaintiff argues that attorney error can never constitute excusable neglect, citing *Maryland Casualty Company v. Conner,* 382 F.2d 13 (10th Cir. 1967). However, the reason given there for the delay was counsel's "preoccupation with other matters." *Id.* at 17. The reason for the delay in the instant case was not irresponsibility of appellant's counsel, nor was it a "tactical decision" by counsel as in *Linabary v. Maritime Overseas Corp.,* 376 F.Supp. 688 (S.D.N.Y. 1973). Rather, the cause of the delay in the instant case was counsel's good faith opinion that section 2107 controlled the time of filing notice of appeal in a suit in admiralty. This type of "error" is not equivalent to the misreading of rule 4(a) to allow 60 rather than 30 days as was the case in *Harlan v. Graybar Electric Company,* 442 F.2d 425 (9th Cir. 1971). Rather, it was the type of "error" similar to that in *Torockio v. Chamberlain Manufacturing Company,* 56 F.R.D. 82, 87–88 (W.D.Pa.1972), *aff'd,* 474 F.2d 1340 (3d Cir. 1973), where the court found excusable the attorney's belief that dismissal without prejudice was not final. Here counsel's delay was occasioned by the clearly conflicting language of two provisions of the law: one statutory and one a rule of court. Although the resolution of this apparent conflict was within access of counsel, we cannot say that the district court abused its discretion in finding counsel's good faith, though erroneous interpretation of the law "excusable neglect." Our holding prejudices plaintiff in no way and, we believe, comports with the intent of the committee which drafted the provision that "the standard of excusable neglect remain a strict one." Stern, *supra,* at 298–99.

## II.

The collision in the instant case occurred as the *Polliwog* was navigating through a series of three bridges at Peoria, defendant's bridge being the second. As he approached the first bridge, the *Polliwog's* pilot observed water breaking over an un-

marked and unlighted obstruction on the left descending side of the channel. This obstruction was later discovered to be a group of pilings which defendant had failed to remove from the channel.[1] In order to avoid this obstruction, the size of which was not known to the pilot at the time, he maneuvered the tow to the right. This maneuver, however, decreased the area available to maneuver safely past defendant's bridge protective system.[2] As the *Polliwog* passed under the first bridge, a set in the current [3] caught the tow, causing the bow of the barges to swing toward the right descending bank and collide with the unlighted protective system of defendant's bridge.

In finding the degrees of fault of each party in the instant case, the district court followed the command of *United States v. Reliable Transfer Company*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), in which the Court held that liability for damages in admiralty is to be allocated in proportion to the relative fault of each party. The district court found defendant 65% at fault due to its failure to provide statutorily required lighting on its bridge protective system [4] and its "permitting an unmarked obstruction to exist in close proximity to the channel and in the area of the river affected by its default in lighting." [5] Plaintiff's share of the fault was based upon the pilot's negligence in aligning the vessel "in such an exaggerated posture to starboard [as it passed beneath the first bridge] that such alignment denied to the pilot any area of maneuver sufficient to cope with any unseen emergency situation." [6] *Decision and Order* at 11.

■ Defendant attacks the district court's apportionment of fault, advancing basically three arguments.[7] In reviewing the district court's decision, we are mindful that "[t]he scope of our review of the findings of the district court sitting in admiralty is the same as that we exercise under Rule 52(a) [of the Federal Rules of Civil Procedure], 28 U.S.C.A. We may not set aside the trial court's findings unless they are clearly erroneous." *American Commercial Lines, Inc. v. Silver Creek Coal Company*, 393 F.2d 178, 180 (7th Cir. 1968).

■ Defendant first argues that the district court "found" that "but for" the set in the current the vessel would have passed through the series of bridges without incident. Thus, defendant in effect argues that the court found the set to be the cause of the collision and not defendant's failure to remove the obstruction or to light the bridge protective system. Assuming, *arguendo*, that the district court did find the vessel would have cleared defendant's bridge had plaintiff's vessel avoided the set,

1. This is not the first time defendant's bridge has been involved in a case before this court. This group of pilings apparently is the remnant of the east channel pier of defendant's bridge which, along with a 150-foot span of the bridge located east of the channel, was destroyed in a collision in 1970. See *Complaint of Wasson*, 495 F.2d 571 (7th Cir. 1974). The pier and span were subsequently removed.

2. The protective system was composed of two sunken barges stacked one on top of the other and anchored to the river bottom.

3. A set was defined in the district court's opinion as "a radical deviation from an established course, which is caused by river currents or other forces not related to any manual act which would alter the boat's course."

4. Citing *The Pennsylvania*, 86 U.S. 125, 136, 22 L.Ed. 148 (1873); *Complaint of Wasson*, 495 F.2d 571, 580 (7th Cir. 1974).

5. Citing *Marine Contracting & Towing Company v. McMeekin Construction Company*, 302 F.Supp. 804, 808 & n. 1 (D.S.C.1969).

6. Citing *The Oregon*, 158 U.S. 186, 192, 15 S.Ct. 804, 39 L.Ed. 943 (1895); *The Louisiana*, 70 U.S. 164, 173–74, 18 L.Ed. 85 (1865).

7. Plaintiff was not the owner of the barge damaged in the collision. Prior to the filing of this action, plaintiff paid Security Barge Line, Inc., the owner of the barge, $60,808.64 in full settlement of all claims and in return Security Barge assigned all claims it possessed for the loss sustained. Thus, contrary to defendant's assertion before this court, plaintiff clearly possessed standing to sue defendant. *American Commercial Lines, Inc. v. Valley Line Company*, 529 F.2d 921, 925 (8th Cir. 1976).

defendant ignores the fact that the presence of the unmarked obstruction necessitated the *Polliwog's* maneuver toward the right descending bank and into the path of the set; and its failure to light the bridge protective system prevented the *Polliwog's* pilot from noticing that the set was swinging his bow starboard. Hence, the district court was clearly correct in finding defendant negligent.

Defendant next argues that under the rule of *The Pennsylvania,* 86 U.S. 125, 22 L.Ed. 148 (1873), its noncompliance with regulations concerning lights cannot cause an accident where there was "actual visibility of what was needed to be seen to avoid the accident." However, the district court did not find that the pilot of the *Polliwog* had such "actual visibility." To the contrary, the district court found that any visual observation of the protective system was in the form of "shadowy forms established when such forms were a relatively few feet apart." *Decision and Order* at 14–15. Nor do we find defendant's assertion that radar aboard the *Polliwog* provided clear visibility supported in any way by the record. In this latter regard, the district found that "visual navigation [as opposed to radar navigation] is a standard procedure employed for navigation through restricted channels of the nature here involved." *Id.* at 11.

Defendant's final argument is that 33 U.S.C. § 192 required the *Polliwog* to have proceeded through the bridges at a "moderate speed," *i.e,* that speed as would enable it to come to a standstill by reversing the engines at full speed before collision. *Union Oil Company v. The San Jacinto,* 409 U.S. 140, 144, 93 S.Ct. 368, 34 L.Ed.2d 365 (1972). By its terms, section 192 pertains only to vessels traveling in "a fog, mist, falling snow, or heavy rainstorms," and not the dark. Nevertheless, the district court explicitly found that the *Polliwog* had reduced speed to ease its way through the bridges. And the district court, in response to this argument below, pointed out that defendant had totally failed to present evidence that operation at a "moderate speed" would have enabled the *Polliwog* to avoid the collision. In light of this, we find defendant's argument meritless.

Therefore, for the reasons stated above, we affirm the judgment of the district court.

Affirmed.