818 F.2d 596
 7 Fed.R.Serv.3d 739
 John H. REDFIELD, Trustee in Bankruptcy of Anthony Cairo,
Plaintiff-Appellant,
v.
CONTINENTAL CASUALTY CORP., Defendant-Appellee.
In the Matter of INTERCONTINENTAL SECURITY CORP., Debtor.
Appeal of CONTINENTAL CASUALTY CORP.
 Nos. 85-1777, 86-1218.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 4, 1986.
Decided May 6, 1987.
Rehearing and Rehearing En Banc Denied July 8, 1987.
 
 John H. Redfield, Chicago, Ill., for plaintiff-appellant.
 James S. Stickles, Jr., Chicago, Ill., for defendant-appellee.
 Before CUMMINGS and COFFEY, Circuit Judges, and SWYGERT, Senior Circuit Judge.
 CUMMINGS, Circuit Judge.
 
 
 1
 This case involves a suit to recover the proceeds payable on three fire insurance policies covering improved real estate which was destroyed by fire. Plaintiff appeals from an order of the district court dismissing with prejudice his amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted. Defendant cross-appeals from an order of the district court granting plaintiff an extension of time to file his notice of appeal. For the reasons set forth below, we affirm the district court's order granting an extension of time to file the notice of appeal, but reverse the order dismissing the amended complaint with prejudice.
 
 
 2
 * At some time prior to January 23, 1982, Anthony Cairo created three Illinois land trusts to which he transferred title to three contiguous parcels of improved real estate at 3276-3280 South Archer Avenue, Chicago, Illinois. Chicago Title & Trust Company ("Chicago Title") was designated as Trustee and Anthony Cairo was named as the sole beneficiary under each of the three trusts. On January 23, 1982, Anthony Cairo contracted with the defendant, Continental Casualty Corporation ("Continental"), to provide fire insurance for the real estate in each of the three trusts. The fire insurance policies, which were subsequently executed and delivered, provided that they were each to become effective on January 23, 1982, and would expire on January 23, 1983.
 
 
 3
 The named insured under Policy No. 018-58-91-08, covering property located at 3276 S. Archer Ave., was designated as "Chicago Title & Trust A/T/U/T # 1078091." The named insured under Policy No. 078-58-91-22, covering property located at 3278 S. Archer Ave., was designated as "Chicago Title & Trust u/t # 10771177." The named insured under Policy No. 018-89-33-31, covering property located at 3280 S. Archer Ave., was designated as "Chicago Title & Trust A/T/U/T # 1076790." The mailing address of the named insured under each of the three policies was given as "c/o Tony Cairo, 3280 S. Archer Avenue, Chicago, Illinois 60608."
 
 
 4
 On March 1, 1982, Cairo transferred title to the subject real estate to three land trusts at the First National Bank of Cicero ("the Bank"). The Bank was named as Trustee under Trust Agreement Nos. 7911, 7912, and 7913, and Anthony Cairo was again designated as the sole beneficiary under each of the trusts. The transfer was apparently effected so that Cairo's beneficial interest in the real estate could be used to secure his personal guaranty of a loan made by the Bank to Intercontinental Security Corp., of which Cairo was an officer.
 
 
 5
 In his brief to this Court, Cairo claims that he continued to pay the premiums due on the policies after the transfer. Defendant Continental conceded at oral argument that the premiums had indeed been paid and accepted during the period following the transfer, although it contended that it did not know who had paid the premiums.
 
 
 6
 On January 1, 1983, while the fire insurance policies were still in effect, the insured property was destroyed by fire. On March 30, 1983, Cairo notified Continental of the loss and submitted a sworn written account of the damage. Continental, however, refused to pay on the loss.
 
 
 7
 To compel Continental to perform on the three insurance contracts, the Bank, Anthony Cairo, and the Bank as Trustee under Trust Agreement Nos. 7911, 7912, and 7913 filed a complaint in the Illinois circuit court to recover the insurance proceeds. The defendant moved to strike and dismiss plaintiffs' complaint because the plaintiffs were neither parties to, nor named as additional insureds, mortgagees, loss payees, or assignees under, the subject insurance contracts. Furthermore, the complaint contained no allegations indicating that any of the plaintiffs were otherwise entitled to sue for an alleged breach of the insurance contracts. On March 1, 1984, the circuit court granted defendant's motion but allowed the plaintiffs 28 days in which to file an amended complaint.
 
 
 8
 In the interim, Anthony Cairo had filed for bankruptcy in federal Bankruptcy Court on February 9, 1984. As a consequence, Anthony Cairo was no longer a proper party to the state court proceeding when the order dismissing plaintiffs' complaint was issued on March 1, 1984. Rather than having himself substituted as the proper party in the state court suit and filing an amended complaint, Cairo's Trustee in Bankruptcy, John H. Redfield, removed the litigation to the Bankruptcy Court on March 30, 1984. Redfield then proceeded to file an amended complaint in Bankruptcy Court on July 18, 1984.
 
 
 9
 The amended complaint was substantially similar to the original complaint filed in state court except that the plaintiffs were now listed as John H. Redfield, Trustee in Bankruptcy of Anthony Cairo, and the First National Bank of Cicero, as Trustee under Trust Agreement Nos. 7911, 7912, and 7913. The complaint alleged that Cairo had been the sole beneficiary of the Bank land trusts since on or about March 1, 1982, but failed to explain how the Bank had come to have an insurable interest in the property covered by the Continental fire insurance policies, or what connection, if any, there was between Anthony Cairo and the named insured on the policies, Chicago Title & Trust Co. The complaint further alleged that Continental had executed and delivered the fire insurance policies to the "plaintiffs" on or about January 23, 1982. This allegation, however, was inconsistent with the previous allegation which indicated that the Bank land trusts had not been created until March 1, 1982.
 
 
 10
 In response to the amended complaint, defendant Continental renewed its motion to dismiss, this time pursuant to Fed.R.Civ.P. 12(b). In addition to its argument that the complaint failed to allege any facts which would indicate that either of the plaintiffs was entitled to sue for an alleged breach of the relevant insurance contracts, Continental advanced an additional ground justifying dismissal, namely, that the amended complaint failed to allege, even generally, compliance with express conditions precedent to a right of recovery under the insurance policies.
 
 
 11
 The litigation was subsequently transferred from Bankruptcy Court to federal district court where defendant's motion to dismiss the amended complaint with prejudice was granted on March 29, 1985. Concluding that the amended complaint alleged no cause of action against defendant Continental under the subject insurance policies, the district court held that its ruling was compelled by the law of the case doctrine in light of the earlier state court ruling on the identical ground. The district court's order dismissing the amended complaint was entered on April 2, 1985.
 
 
 12
 The Bank subsequently informed Redfield that it was not interested in pursuing the litigation on appeal. Redfield did attempt to perfect an appeal, but his notice of appeal was not filed in the district court until May 7, 1985, exceeding by five days the thirty-day period allowed for appeal under Fed.R.App.P. 4(a)(1). On May 17, 1985, Redfield filed a motion in the district court to extend the time for appeal and to clarify the record. On January 24, 1986, the district court granted Redfield's motion to extend the time for filing a notice of appeal until May 7, 1985, finding pursuant to Fed.R.App.P. 4(a)(5) that Redfield had demonstrated "excusable neglect" for his failure to file within the original thirty-day period. Defendant Continental appeals from this order.
 
 II
 
 13
 Before analyzing whether the district court properly dismissed the amended complaint with prejudice, we must first determine whether plaintiff Redfield's notice of appeal was timely filed. The timely filing of a notice of appeal is mandatory and jurisdictional. Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 61, 103 S.Ct. 400, 403, 74 L.Ed.2d 225; Browder v. Director, Illinois Dep't of Corrections, 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521; United States v. Robinson, 361 U.S. 220, 229, 80 S.Ct. 282, 288, 4 L.Ed.2d 259; Wort v. Vierling, 778 F.2d 1233, 1234 (7th Cir.1985).
 
 
 14
 Fed.R.App.P. 4(a)(1) requires that a notice of appeal in a civil case, other than one to which the United States or an officer or agency thereof is a party, be filed with the clerk of the district court within 30 days after the entry of the judgment or order appealed from. Because the order dismissing the amended complaint in this case was entered on April 2, 1985, the plaintiff should have filed his notice of appeal no later than May 2, 1985. In fact, plaintiff's notice was not filed until May 7, 1985. Upon being notified of his error, plaintiff promptly filed on May 17, 1985, a motion with the district court requesting an extension of time in which to file his notice of appeal pursuant to Fed.R.App.P. 4(a)(5). Rule 4(a)(5) provides that "[t]he district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by this Rule 4(a)." Finding that the plaintiff had demonstrated "excusable neglect" for his failure to file within the original thirty-day period, the district court granted plaintiff's motion and extended the time for appeal until May 7, 1985.
 
 
 15
 Defendant Continental attacks the district court's order on essentially two grounds. Initially, Continental contends that the district court applied an incorrect legal standard in granting plaintiff's motion for an extension of time to appeal. As set out above, Fed.R.App.P. 4(a)(5) permits a district court to grant such a motion upon a showing of "excusable neglect or good cause." The Advisory Committee notes indicate that "excusable neglect" is the appropriate standard in cases in which the motion is made after the time for filing the notice of appeal has run, while "good cause" is the appropriate standard in cases in which the appellant seeks an extension of time before the expiration of the initial thirty-day period. See In re Cosmopolitan Aviation Corp., 763 F.2d 507, 514 (2d Cir.1985). The "good cause" component, which demands a lesser showing than "excusable neglect," was added to Rule 4(a)(5) in 1979, the Committee notes explain, because the "excusable neglect" standard never precisely fit the latter situation.
 
 
 16
 Defendant Continental complains that the district court incorrectly applied the "good cause" standard in evaluating plaintiff's motion for an extension even though the motion was filed after the initial thirty-day period for appeal had expired. Although the district court did not explicitly set out the above distinction in its opinion after indicating that an extension of time for filing a notice of appeal required a showing of " 'excusable neglect or good cause,' " we are confident from a reading of the district court's opinion as a whole that it correctly relied upon the "excusable neglect" standard in granting plantiff's motion.[1] Indeed, in determining that excusable neglect existed, the district court relied on this Court's decision in Feeder Line Towing Serv., Inc. v. Toledo, Peoria & W. R.R. Co., 539 F.2d 1107 (7th Cir.1976), a decision that was rendered prior to the 1979 amendment adding the "good cause" component and that therefore addressed itself solely to the "excusable neglect" standard.
 
 
 17
 Next, defendant contends that the district court erred in finding that plaintiff had made a showing of excusable neglect and granting plaintiff's motion for an extension of time to appeal. Although the standard of excusable neglect is a strict one, Feeder Line, 539 F.2d at 1109, this Court has consistently held that great deference must be accorded a district court's finding of excusable neglect. See Reinsurance Co. of America v. Administratia Asigurarilor de Stat, 808 F.2d 1249, 1251 (7th Cir.1987); Files v. City of Rockford, 440 F.2d 811, 816 (7th Cir.1971); In re Cosmopolitan, 763 F.2d at 514. Extensions granted under Rule 4(a)(5) should not be disturbed unless there has been a clear abuse of discretion by the district court. See Reinsurance Co. of America, 808 F.2d at 1251; Feeder Line, 539 F.2d at 1109; Files, 440 F.2d at 816; see also Cuevas v. Reading & Bates Corp., 770 F.2d 1371, 1377 (5th Cir.1985); In re Cosmopolitan, 763 F.2d at 514; McGarr v. United States, 736 F.2d 912, 919 (3d Cir.1984); In re Estate of Butler's Tire & Battery Co., 592 F.2d 1028, 1032 (9th Cir.1979). "If [the district court] finds excusable neglect and grants an extension, the court of appeals should not second-guess this determination and defeat the appeal...." 16 Wright, Miller, Cooper & Gressman, Federal Practice & Procedure Sec. 3950, at 367.
 
 
 18
 Excusable neglect will generally be found where a party in good faith relied on the actions and representations of the district court or its officers, and consequently failed to file a timely notice of appeal. See, e.g., Mennen Co. v. Gillette Co., 719 F.2d 568, 570-571 (2d Cir.1983); In re Donnell, 639 F.2d 535, 540 (9th Cir.1981). Similarly, under appropriate circumstances, failure to learn of the entry of judgment will support a finding of excusable neglect, as will uncontrollable delays in the delivery of mail, unpredictable events that affect the delivery of the notice of appeal to the clerk, unpredictable events that affect the feasibility of appeal, and plausible misconstructions, but not mere ignorance, of the law or rules. 9 Moore's Federal Practice p 204.13[1.-3], at 4-94 to 4-97.
 
 
 19
 On the basis of the record before us, we are unable to conclude that the district court abused its discretion in granting plaintiff's motion. When Redfield v. Continental Casualty Co., an adversary proceeding to a bankruptcy action, was initially transferred from Bankruptcy Court to district court, it was assigned to Judge Marshall and given No. 84 A 0383. Defendant Continental then filed a motion for relatedness, seeking to have the Redfield case transferred to Judge Leighton, who already had pending before him a related case, Levy v. Continental Casualty Co., No. 84 C 3266, but to which Redfield was not a party. Judge Leighton granted the motion, and placed the Redfield case on his calendar.[2] However, case No. 84 A 0383 was never formally reassigned to Judge Leighton, and thus the docket sheet for No. 84 A 0383 was never transferred from Judge Marshall to Judge Leighton. Subsequent to the granting of the motion for relatedness, all further orders in case No. 84 A 0383 were entered under civil docket No. 84 C 3266. As a result of this error, plaintiff Redfield never received a copy of the March 29, 1985, order of the district court dismissing his amended complaint in case No. 84 A 0383, for he was not a party to case No. 84 C 3266. At some time within the original thirty-day period for appeal, Redfield learned of the district court's order and proceeded to check the official court file to determine the date on which the order had been entered. In reviewing the file, Redfield mistakenly believed that the order had been docketed on April 8, 1985, rather than April 2, 1985, the correct date, because the order dismissing the complaint was stuck to an order setting a date for a status hearing. Accordingly, when Redfield filed his notice of appeal on May 7, 1985, he was acting under the albeit false belief that the thirty-day appeal period did not expire until May 8, 1985.
 
 
 20
 The defendant argues that failure to receive notice of the entry of an order or judgment cannot constitute excusable neglect and cites Fed.R.Civ.P. 77(d). Rule 77(d) provides: "Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 4(a) of the Federal Rules of Appellate Procedure." (emphasis added). While we agree that mere lack of notice of the entry of a judgment does not automatically authorize relief, the clear import of Rule 77(d) is that such a failure of notice, when coupled with the appropriate circumstances, may support a finding of excusable neglect under Fed.R.App.P. 4(a)(5). This conclusion is strengthened by the Advisory Committee note to amended subdivision (d):
 
 
 21
 Notification by the clerk is merely for the convenience of litigants. And lack of such notification in itself has no effect upon the time for appeal; but in considering an application for extension of time for appeal as provided in Rule 73(a) [precursor to Fed.R.App.P. 4(a)(5) ], the court may take into account, as one of the factors affecting its decision, whether the clerk failed to give notice as provided in Rule 77(d), or the party failed to receive the clerk's notice.
 
 
 22
 Other circuit courts have affirmed extensions under Rule 4(a)(5) where the district court's finding of excusable neglect has been based on lack of notice of the entry of judgment as long as the appellant has made some, although unsuccessful, attempt to ascertain the status of his case. See Cuevas v. Reading & Bates Corp., 770 F.2d 1371, 1377 (5th Cir.1985) (district court has clear authority under Rule 4(a)(5) to allow extension when lack of notice is accompanied by showing of excusable neglect); McGarr v. United States, 736 F.2d 912, 919 (3d Cir.1984) (lack of notice of entry of judgment is certainly a factor in the excusable neglect determination); Rodgers v. Watt, 722 F.2d 456, 460 (9th Cir.1983) (failure of clerk to give notice should be considered as a factor in the totality of circumstances for a finding of excusable neglect).
 
 
 23
 Moreover, this case involves far more than the failure of the clerk to notify plaintiff Redfield of the district court's order dismissing the amended complaint. Here, the clerk failed to enter the order under the correct case number on the correct docket sheet, thus preventing Redfield from learning that the order had been entered even through an examination of the docket sheet. Rather than relying solely on the clerk to notify him of the entry of the order, Redfield attempted, as he should have, to ascertain the status of his case by checking the official court file under the wrong case number, although he mistakenly took April 8, 1985, to be the date on which the order was entered since it was stuck to another order docketed in case No. 84 C 3266 on that date. See Cuevas, 770 F.2d at 1377 (emphasizing importance of appellants' efforts to ascertain status of case in excusable neglect determination under Rule 4(a)(5) in case in which clerk failed to notify appellants of entry of judgment).
 
 
 24
 The Ninth Circuit has upheld a district court's finding of excusable neglect under Fed.R.App.P. 4(a)(5) based on a similar type of error by the clerk. In Rodgers v. Watt, 722 F.2d 456 (9th Cir.1983), the district court had filed an order granting the defendant's motion for summary judgment on March 26, 1980, but the clerk of the court entered the judgment on the docket sheet out of chronological sequence and failed to notify the parties of the entry of judgment. When the plaintiffs went to check the docket sheet, the last entry recorded a March 24th hearing on objections to the magistrate's report instead of the judgment dismissing the action. The Ninth Circuit found that "the clerk's failure to have the entries in the proper order was a factor to be considered in determining excusable neglect." Id. at 461. While suggesting that a more diligent counsel might have checked the earlier docket entries, the court concluded that it was certainly within the trial court's discretion to hold that the failure to do so was excusable. Id.
 
 
 25
 In its brief to this Court, defendant cites a host of cases standing for the proposition that the mere mistake or clerical error of an attorney does not constitute excusable neglect. See, e.g., State of Oregon v. Champion Int'l Corp., 680 F.2d 1300 (9th Cir.1982); Airline Pilots v. Executive Airlines, Inc., 569 F.2d 1174 (1st Cir.1978); Brainerd v. Beal, 498 F.2d 901 (7th Cir.1974). We find these cases to be neither applicable nor persuasive here. Under the particular facts and circumstances of this case, we cannot say that the district court abused its discretion in finding excusable neglect and granting the extension of time to file the notice of appeal.[3] Perhaps a more diligent attorney might have been able to overcome the obstacle presented by the confused record in this case. Indeed the conduct of plaintiff's attorney here is hardly a model. We wholeheartedly agree with the dissent's admonition that attorneys must exercise extreme care in ascertaining the proper period in which to file a timely notice of appeal. But the confusion in this case is largely attributable to a clerk's error which has persisted even on appeal to this Court.[4] The district courts should of course continue to apply the excusable neglect standard strictly, but relief under Fed.R.App.P. 4(a)(5) must be available in situations, like this one, in which "tardiness is excusable and in which it is unfair to dismiss an appeal because of late filing of the notice." Feeder Line, 539 F.2d at 1109 (quoting Stern, Changes in the Federal Appellate Rules, 41 F.R.D. 297, 298 (1966)).[5]
 
 III
 
 26
 Having determined that plaintiff Redfield's notice of appeal was timely filed, we proceed to review the district court's dismissal of the amended complaint with prejudice for failure to state a claim against defendant Continental under the three insurance policies. At the outset we note that only plaintiff Redfield has appealed the district court's order of dismissal. Plaintiff First National Bank of Cicero has chosen not to take an appeal, and we therefore do not reach the merits of that disposition. The only nonjurisdictional issue presented by this appeal is whether Redfield is entitled to seek recovery under the fire insurance policies on behalf of Anthony Cairo, the sole beneficiary under both the Chicago Title and the Bank land trusts.
 
 
 27
 Before considering that question, however, we must first determine whether the district court properly invoked the law of the case doctrine in dismissing the amended complaint with prejudice. The law of the case doctrine provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case. See Arizona v. California, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318; Ferrell v. Pierce, 785 F.2d 1372, 1385 (7th Cir.1986); 1B Moore's Federal Practice p 0.404, at 117-124. Unlike the doctrine of stare decisis, however, law of the case is a discretionary doctrine. Justice Holmes established early on that "the phrase, law of the case, ... merely expresses the practice of courts generally to refuse to open what has been decided, not a limit to their power." Messenger v. Anderson, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152. The law of the case will not be enforced where it is clearly erroneous or where doing so would produce an injustice. See, e.g., Arizona v. California, 460 U.S. at 618 n. 8, 103 S.Ct. at 1391 n. 8; United States v. Mazak, 789 F.2d 580, 581 (7th Cir.1986); Devines v. Maier, 728 F.2d 876, 880 (7th Cir.1984); Champaign-Urbana News Agency, Inc. v. J.L. Cummins News Co., 632 F.2d 680, 683 (7th Cir.1980) ("To modify the law of the case is primarily a matter of 'good sense.' ").
 
 
 28
 Although the law of the case doctrine is most commonly applied to govern the conduct of litigation on remand after an appeal, the doctrine also applies when a state court action is removed to federal court. See Barrett v. Baylor, 457 F.2d 119, 123-124 (7th Cir.1972); 1B Moore's Federal Practice p 0.404, at 149-154. In this context, however, the law of the case doctrine may come into conflict with the Federal Rules of Civil Procedure which govern procedural matters in the federal courts. A federal court will not be bound by any rule of state practice that conflicts with one of the federal rules. Hanna v. Plumer, 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8.
 
 
 29
 The district court was confronted with such a conflict in this case. The standard for determining whether a complaint states a cause of action differs under Illinois and federal law. Illinois is a fact-pleading State. People ex rel. Fahner v. Carriage Way West, Inc., 88 Ill.2d 300, 308, 58 Ill.Dec. 754, 757-758, 430 N.E.2d 1005, 1008-1009 (1981); Wait v. First Midwest Bank/Danville, 142 Ill.App.3d 703, 707, 96 Ill.Dec. 516, 521, 491 N.E.2d 795, 800 (1986); Ill.Rev.Stat. ch. 110, p 2-601. To avoid dismissal, a complaint must be both legally sufficient, i.e., it must set forth a legally recognized claim for recovery, and factually sufficient, i.e., it must plead facts which bring the claim within the legally recognized cause of action alleged. To the contrary, Fed.R.Civ.P. 8(a) permits notice pleading, requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief." As a consequence, a plaintiff in federal court need not set out in detail the facts upon which his claim is based. See American Nurses' Ass'n v. Illinois, 783 F.2d 716, 727 (7th Cir.1986).
 
 
 30
 In determining whether as a matter of law the amended complaint stated a cause of action, the district court sitting in this adversary proceeding to a bankruptcy action was of course required to look to Illinois law. In determining whether the amended complaint sufficiently set out that cause of action, however, the district court was not bound by the prior state court ruling, but rather was compelled to make an independent judgment pursuant to Fed.R.Civ.P. 8. Because the district court failed to determine whether the amended complaint was sufficient under federal practice, we must undertake such a review.
 
 
 31
 It is well established in the federal courts that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59; Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80; Doe v. St. Joseph's Hosp., 788 F.2d 411, 414 (7th Cir.1986); American Nurses' Ass'n v. Illinois, 783 F.2d 716, 727 (7th Cir.1986). On a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), plaintiff's allegations must be taken as true and must be viewed, along with all reasonable inferences to be drawn therefrom, in the light most favorable to the plaintiff. Doe, 788 F.2d at 414; Ellsworth v. City of Racine, 774 F.2d 182, 184 (7th Cir.1985).
 
 
 32
 A property insurance contract is a personal contract between the named insured and the insurer to idemnify the insured against loss resulting from the destruction of or damage to his interest in property covered by the contract. The contract does not insure the property itself and thus does not run with the covered property unless the contract expressly so provides. See Mack v. Liverpool & London & Globe Ins. Co., 329 Ill. 158, 162, 160 N.E. 222, 224 (1928); Goldstein v. Scott, 108 Ill.App.3d 867, 872-873, 64 Ill.Dec. 374, 378, 439 N.E.2d 1039, 1043 (1982); Miyata v. Peerless Ins. Co., 95 Ill.App.3d 584, 587, 51 Ill.Dec. 79, 82, 420 N.E.2d 493, 496 (1981); Founders Mut. Casualty Co. v. Mark, 14 Ill.App.3d 204, 207, 302 N.E.2d 142, 144 (1973); East St. Louis Lumber Co. v. U.S. Branch of London Assurance Corp., 246 Ill.App. 574, 576 (1927); Klefstad v. American Cent. Ins. Co., 207 F.2d 288 (7th Cir.1953). "Accordingly, one not named as an insured cannot maintain an action upon the policy, and a person having no interest in the contract and not showing a clear legal right to participate in the proceeds thereof, can establish no recovery therein." 5A Appleman, Insurance Law & Practice Sec. 3331, at 123-124.
 
 
 33
 If these traditional principles of insurance law are controlling here, only the named insured, Chicago Title & Trust Co., would be entitled to recover under the three fire insurance policies. The Illinois courts held early on that when title to real property rests in a trustee, the trustee, rather than the beneficial owner, has an insurable interest in the property and may procure fire insurance covering that property. Fray v. National Fire Ins. Co., 255 Ill.App. 209, 213 (1929), affirmed, 341 Ill. 431, 173 N.E. 479 (1930). While holding that a land trustee could recover under an insurance policy taken out in his name, the Illinois courts did not address whether the beneficial owner could also seek to recover under the policy if the trustee were for some reason unable to do so.
 
 
 34
 In deciding whether plaintiff Redfield may sue for breach of the insurance contracts, we must also keep in mind the well-settled principle disfavoring forfeitures of insurance policies on technical grounds which bear no substantial relationship to the insurer's risk. Mack v. Liverpool & London & Globe Ins. Co., 329 Ill. at 163, 160 N.E. at 225; National Discount Shoes, Inc. v. Royal Globe Ins. Co., 99 Ill.App.3d 54, 61-62, 54 Ill.Dec. 263, 269, 424 N.E.2d 1166, 1172 (1981). Defendant Continental admitted at oral argument that the premiums due on the fire insurance policies were paid for the period covering January 23, 1982, through January 23, 1983. The proper parties to bring suit to recover the insurance proceeds payable under the policies, namely the land trustees, are, however, effectively barred from so doing. The Bank, the successor trustee and a possible assignee of Chicago Title under the policies, failed to appeal the district court's ruling and is thus bound by that disposition. Chicago Title lost its insurable interest in the covered property when title thereto was transferred to the Bank and hence would be unable to recover under the policies even though it was the named insured. Patterson v. Durand Farmers Mut. Fire Ins. Co., 303 Ill.App. 128, 138, 24 N.E.2d 740, 744 (1940). Furthermore, at this date, Chicago Title would be barred from initiating a suit on the policies by their very terms which require that any such action be commenced within one year of the date of the loss. At oral argument, Continental stated that it would enforce this policy provision against Chicago Title were it to bring suit. We are thus faced with a situation where a beneficial owner has suffered a substantial loss resulting from the destruction of his property by fire, but the proper parties to maintain an action to recover under the fire insurance policies which were in effect at the time of the loss cannot do so.
 
 
 35
 Although insurance contracts are personal, the Illinois Supreme Court has held that it does not necessarily follow that an action to recover under an insurance contract "must be prosecuted, under all circumstances, only in the name of the person insured." Mack v. Liverpool & London & Globe Ins. Co., 329 Ill. at 162, 160 N.E. at 224 (receiver in charge of property which had been destroyed by fire may be directed by appointing court to institute suit upon an existing fire insurance policy to recover damages for loss sustained). We hold that plaintiff Redfield, as trustee in bankruptcy for Anthony Cairo, is entitled to sue on the fire insurance policies issued by the defendant despite the fact that Cairo was not named as an insured under the policies. In addition to being persuaded by the equities of the case before us, we find support for our decision in both the case law and the peculiar nature of the Illinois land trust.
 
 
 36
 The Illinois land trust, a unique creation of Illinois law, is in essence only a form of real property ownership. See generally H. Kenoe, Kenoe on Land Trusts (1981 & Supp.1985); Haswell & Levine, The Illinois Land Trust: A Fictional Best Seller, 33 DePaul L.Rev. 277 (1984). A land trust is created by the execution and recording of a deed in trust transferring all legal and equitable title to real property to a trustee. The original owner is designated as the beneficiary of the trust and retains an assignable personal property interest in the trust. The deed does not identify the beneficiary nor does it describe the terms of the trust. A second document, the trust agreement, is contemporaneously executed and outlines the right of the beneficiary to retain absolute control over the management, use, and disposition of the property and to receive all proceeds from the property. Unlike the conventional trust in which the trustee is vested with broad powers over the management and disposition of the trust property, the land trustee may act only at the beneficiary's direction. The trust agreement is not recorded and normally is kept secret from the public.
 
 
 37
 A land trust allows the beneficiary to retain most of the usual attributes of real property ownership while affording him the advantages of secrecy of ownership and ease of transfer. Because the trustee has no control over the management and operation of the trust property, he is liable neither for real estate taxes, see People v. Chicago Title & Trust Co., 75 Ill.2d 479, 27 Ill.Dec. 476, 389 N.E.2d 540 (1979); Gamble v. People, 117 Ill.App.3d 784, 73 Ill.Dec. 282, 454 N.E.2d 26 (1983), nor for tortious or statutory violations arising out of the operation and maintenance of the property, see Robinson v. Walker, 63 Ill.App.2d 204, 211 N.E.2d 488 (1965) (Dram Shop Act); Fields v. 6125 Indiana Ave. Apts., Inc., 47 Ill.App.2d 55, 196 N.E.2d 485 (1964) (tort liability); Brazowski v. Chicago Title & Trust Co., 280 Ill.App. 293 (1935) (tort liability). The Illinois Supreme Court has held that for all practical purposes the beneficiary of a land trust is to be treated as the true owner of the trust property:
 
 
 38
 In examining a land trust it is apparent that true ownership lies with the beneficiaries though title lies with the trustee. The trustee derives all of his power from the beneficiary and acts solely on the beneficiary's behalf. The beneficiary may withdraw or modify the trustee's authority at any time. * * * Indeed, there is not a single attribute of ownership, except title, which does not rest in the beneficiary. The rights of creation, modification, management, income and termination all belong to the beneficiary. * * * In reality the transfer to the trustee is a formality involving a shifting of legal documents. The land trust is, in fact, a fiction which has become entrenched in the law of this State and accepted as a useful instrument in the handling of real estate transactions. Outside of relationships based on legal title, the trustees' title has little significance.
 
 
 39
 People v. Chicago Title & Trust Co., 75 Ill.2d at 492-493, 27 Ill.Dec. at 481, 389 N.E.2d at 545 (citations omitted) (emphasis in original).
 
 
 40
 Although the beneficiary is ordinarily required to procure insurance covering the real property held in trust, the land trustee is always designated as the named insured because both legal and equitable title to the property are in his name. See H. Kenoe, supra, p 5.52, at 5-194. In the event of a loss, recovery under the policy is processed in the name of the trustee, and payment issued to the trustee is impressed with a trust in favor of the beneficiary. See Fray, 255 Ill.App. at 213; Crook v. Hartford Fire Insurance Co., 175 S.C. 42, 178 S.E. 254, 258 (1935). A problem naturally arises where the trustee is for some reason either unable or unwilling to initiate recovery under an insurance policy pursuant to a loss. If traditional insurance law, which restricts recovery to the named insured, is controlling, the beneficiary is left without a remedy, and a forfeiture of the policy will result.
 
 
 41
 Unlike the conventional real estate trust where the trustee exercises dominion and control over the trust property, however, a land trustee is a mere titleholder. The beneficiary is the party who contracts with the insurer, pays the premiums, and ultimately receives any insurance proceeds paid to the trustee on his behalf. Just as the beneficiary is deemed to be the true owner of the property held in trust, so is he the true "insured" under the policy even though he is not expressly named. Thus if the insurance policy is otherwise valid and in effect at the time of the loss, the beneficiary should not be left helpless merely because the land trustee, the proper party to seek recovery under the policy, either will not or cannot do so. In such a situation, the beneficiary under the land trust should be able to proceed directly against the insurer.
 
 
 42
 This result finds support in the case law. In National Discount Shoes, Inc. v. Royal Globe Ins. Co., 99 Ill.App.3d 54, 54 Ill.Dec. 263, 424 N.E.2d 1166 (1981), the court analyzed the interest of a beneficiary under a land trust in a fire insurance policy covering the trust property.[6] Although the land trustee was the named insured in the insurance contract, the address of the named insured was given as that of the land beneficiary. Emphasizing that insurance contracts must be read and construed as a whole, and that any ambiguities or inconsistent or conflicting provisions must be construed in favor of granting coverage to the insured, the court held:
 
 
 43
 [I]t is clear that the parties to the contract understood that [the beneficiary] was in fact the party whose interest was to be protected by the contract and that the trustee was only named as the insured because it was early held in Illinois that when the legal title is in the trustee he is the only one who may insure it.
 
 
 44
 Id. at 60, 54 Ill.Dec. at 268, 424 N.E.2d at 1171 (citing Fray, 255 Ill.App. 209). As a result, the court found no error in the insurer's having paid the beneficiary directly, particularly because the land trustee had disclaimed all interest in the policy by assigning it after the sale of the trust property.
 
 
 45
 The facts of the instant case closely resemble those of National Discount Shoes. Although the named insured on the three fire insurance policies was given as "Chicago Title & Trust Co. as Trustee" under various trust agreements, defendant Continental was on notice that the unnamed beneficiary was the real party in interest under the policy and not the trustee.[7] See Spellings v. Lawyers Title Ins. Corp., 644 S.W.2d 804 (Tex.Ct.App.1982) (beneficial owners of land could sue for breach of title insurance policy which named land trustee as insured because they were third-party beneficiaries of the policy). Moreover, the address of the named insured was given as that of Tony Cairo, the beneficiary of the trust, not that of Chicago Title & Trust Co. From the above, we may infer that it was the intention of defendant Continental, Chicago Title, and Cairo that Cairo's interest be protected under the policies.[8] Cf. Rainbow Trucking, Inc. v. Ennia Ins. Co., 500 F.Supp. 96, 98 (E.D.Pa.1980).
 
 
 46
 Furthermore, when the trust property was transferred from the Chicago Title land trusts to the Bank land trusts, Chicago Title in effect disclaimed all interest in the policies. The Bank, the successor trustee and a possible assignee under the policies, has similarly disclaimed its interest in the policies by failing to appeal the district court's order. Other courts have permitted the beneficial owner of goods held in trust to proceed directly against the insurer seeking recovery under an insurance policy issued in the name of the trustee where the trustee has disclaimed all interest in the policy by failing to seek recovery thereunder. See, e.g., B.N. Exton & Co. v. Home Fire & Marine Ins. Co., 249 N.Y. 258, 164 N.E. 43 (1928); Camden Fire Ins. Ass'n v. Baird, 187 S.W. 699 (Tex.Civ.App.1916); 5A Appleman, Insurance Law & Practice Sec. 3337.
 
 
 47
 It is true that plaintiffs' amended complaint failed to allege that Anthony Cairo was the sole beneficiary under the Chicago Title land trusts, although that fact could be reasonably inferred from the insurance contracts attached to the complaint. Nevertheless, this failure was at most a technical defect which in no way warranted a dismissal with prejudice.[9] See Rainbow Trucking, Inc. v. Ennia Ins. Co., 500 F.Supp. 96, 98 (E.D.Pa.1980) (failure to allege insurable interest did not render complaint fatally defective). In Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80, the Supreme Court set out the general policy of the federal courts favoring liberal construction of pleadings. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Id. at 48, 78 S.Ct. at 103. Professors Wright and Miller have similarly commented:A dismissal under Rule 12(b)(6) generally is not on the merits and the court normally will give plaintiff leave to file an amended complaint. The federal policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that plaintiff be given every opportunity to cure a formal defect in his pleading. * * * Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim.
 
 
 48
 5 Wright & Miller, Federal Practice & Procedure Sec. 1357, at 611-613. See also Musikiwamba v. ESSI, Inc., 760 F.2d 740, 753 (7th Cir.1985); Friedlander v. Nims, 755 F.2d 810, 813 (11th Cir.1985); Micklus v. Greer, 705 F.2d 314, 317 n. 3 (8th Cir.1983); Jureczki v. City of Seabrook, 668 F.2d 851, 854 (5th Cir.1982) (dismissal with prejudice is a drastic remedy to be used only where a lesser sanction would not better serve the interests of justice). Although we think that requiring plaintiff Redfield at this point to amend the complaint to include the above allegation would be of limited usefulness, because of our disposition in Part IV infra, Redfield on remand should be given leave to amend the amended complaint to include an allegation setting out Cairo's interest in the Chicago Title & Trust land trusts.
 
 IV
 
 49
 Because we hold that the district court incorrectly determined that plaintiff was not entitled to sue for an alleged breach of the insurance contracts, we must reach the additional ground advanced by Continental justifying dismissal, namely that the amended complaint failed to allege, even generally, compliance with the express conditions precedent to a right to recovery under the insurance contracts. An essential allegation of a complaint based upon a breach of contract is that the plaintiff performed all contractual conditions required of him. Wilbur v. Potpora, 123 Ill.App.3d 166, 169-170, 78 Ill.Dec. 615, 617-618, 462 N.E.2d 734, 736-737 (1984); Martin-Trigona v. Bloomington Fed. Sav. & Loan Ass'n, 101 Ill.App.3d 943, 946, 57 Ill.Dec. 348, 351, 428 N.E.2d 1028, 1031 (1981); Topping v. Fry, 147 F.2d 715, 718 (7th Cir.1945). Alleging performance of all conditions precedent under a contract is no less essential in an action to recover for breach of an insurance contract. See Donnelly v. Washington Nat'l Ins. Co., 136 Ill.App.3d 78, 87, 90 Ill.Dec. 605, 610, 482 N.E.2d 424, 431 (1985); Roberto v. Hartford Fire Ins. Co., 177 F.2d 811, 815 (7th Cir.1949), 20B Appleman, Insurance Law & Practice Sec. 11844.
 
 
 50
 Although pleading the performance of conditions precedent is necessary to state a cause of action for breach of contract, Fed.R.Civ.P. 9(c) permits a plaintiff "to aver generally that all conditions precedent have been performed or have occurred." See Topping v. Fry, 147 F.2d at 718. Our inspection of the amended complaint reveals that it contains no allegation, either general or specific, regarding the performance of all conditions precedent. Absent such an allegation, the amended complaint fails to state a cause of action for breach of the three fire insurance contracts. The appropriate remedy for a plaintiff's failure to allege compliance with conditions precedent is dismissal without prejudice. See Maguire v. Federal Crop Ins. Corp., 181 F.2d 320, 322 (5th Cir.1950); Rainbow Trucking, Inc. v. Ennia Ins. Co., 500 F.Supp. 96, 98 (E.D.Pa.1980); and cases cited in Part III supra. Therefore, on remand the district court should grant plaintiff leave to amend his complaint to comply with Rule 9(c), either alleging performance of all conditions precedent generally or providing an excuse for his failure to perform. We admonish plaintiff to make certain that the necessary amendments are made before filing the third amended complaint as he surely will not be given the opportunity to file a fourth.
 
 V
 
 51
 We therefore affirm the district court's order extending the time for plaintiff to file his notice of appeal but reverse the order dismissing the amended complaint with prejudice. Consequently, we remand for further proceedings consistent with this opinion. It is further ordered that Circuit Rule 36 shall apply.
 
 
 52
 COFFEY, Circuit Judge, dissenting.
 
 
 53
 The Majority condones an attorney's careless and unprofessional handling of a case and allows the attorney to escape the consequences of his own negligence under the guise of excusable neglect where the facts clearly establish the absence of any "unique" or "extraordinary" circumstance that might justify such a determination. The attorney had the necessary information he needed to ascertain the time-frame within which he had to act in order that he might pursue his claim, despite the docketing confusion and the tardiness of the court in serving notice of its dismissing of the complaint on the attorney. Because the doctrine of excusable neglect is not intended to protect attorneys from the consequences of their carelessness, I dissent from that portion of the Majority opinion affirming the district court's order granting the plaintiff attorney a five-day extension of time in which to file a notice of his appeal.
 
 
 54
 Plaintiff-appellant Attorney Redfield filed his notice of appeal in this case on May 7, 1985, five days after the deadline for filing the motion had elapsed. The district court entered an order dismissing his complaint with prejudice on April 2, 1985 and under Fed.R.App.P. 4(a)(1), he had 30 days (i.e., until May 2, 1985) to file notice of his intent to appeal. According to Redfield, he learned of the district court's dismissal of his complaint on April 15, 1985 (17 days before the deadline for filing notice of his appeal) but states that somehow he misread the orders in the court's file so as to believe that the court's order was entered on April 8, 1985, not April 2, and thus he believed he had until May 8, 1985 to file the notice of appeal. Redfield claims that he noted the incorrect date of the decision (i.e., April 8) because the order in his case was "stuck to" another order in the file that was entered on April 8, 1985.[1] In other words, in spite of this self-serving excuse, the record reflects that on April 15, 1985, Redfield had all the necessary information to enable him to determine the deadline for the filing of his notice of appeal had he carefully examined the court file in a lawyer-like professional manner.[2]
 
 
 55
 The Supreme Court has stated that "It is well settled that the requirement of a timely notice of appeal is 'mandatory and jurisdictional.' " Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 61, 103 S.Ct. 400, 403, 74 L.Ed.2d 225 (1982) (quoting Browder v. Director, Illinois Department of Corrections, 434 U.S. 257, 264, 98 S.Ct. 556, 561, 54 L.Ed.2d 521 (1978)) (emphasis added). In holding that the district court did not abuse its discretion in allowing the appellant to file a late notice of appeal of the district court's dismissal of his complaint, the Majority ignores the well-established policy of statutorily enacted timing limitations such as the one found in Fed.R.App.P. 4(a). In Matton Steamboat Co. v. Murphy, 319 U.S. 412, 415, 63 S.Ct. 1126, 1128, 87 L.Ed. 1483 (1943) the Supreme Court stated:
 
 
 56
 "The purpose of statutes limiting the period of appeal is to set a definite point of time when litigation shall be at end unless within that time the prescribed application has been made; and if it has not, to advise prospective appellees that they are freed of the appellant's demands."
 
 
 57
 Compliance with time limitations is important because: "The filing of a notice of appeal is an event of jurisdictional significance--it confers jurisdiction on the court of appeals and divests the district court of its control of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982).[3]
 
 
 58
 This court in a recent case mandated that " 'excusable neglect' was intended to be narrowly construed." Reinsurance Company of America, Inc. v. Administratia Asigurarilor De Stat, 808 F.2d 1249, 1251 (7th Cir.1987) (emphasis added). In Reinsurance Company, despite learning conclusively of the judgment nine days before the filing deadline, the appellant argued it did not learn of the district court's decision in sufficient time and, in any event, mailed its notice of appeal in a reasonable manner by allowing four days (during the Christmas season) for the notice of appeal to reach the appropriate destination. In analyzing whether there was excusable neglect, this court stated:
 
 
 59
 "The history of the 'excusable neglect' standard ... clearly indicates that, with the exception of 'extraordinary cases where injustice would otherwise result,' few circumstances will ordinarily qualify under the excusable neglect rubric. An apparent exception to this otherwise strict application of the 30-day appeal period can be found in a relatively limited number of cases whose facts evidence what the Supreme Court has termed 'unique circumstances.' "
 
 
 60
 Id. at 1251-52 (footnote omitted) (emphasis added). This court refused to overturn the district court's denial of an extension of time to file a late notice of appeal taking note of the appellant's "extraordinarily casual manner." Id. at 1253. Although not in so many words, the panel clearly refused to consider the circumstances to be "unique." In reviewing the decisions of other circuits concerning excusable neglect, I note that an extremely high standard must be met to establish excusable neglect. The First Circuit has required "circumstances that are unique or extraordinary." Airline Pilots in Service of Executive Airlines, Inc. v. Executive Airlines, Inc., 569 F.2d 1174, 1175 (1st Cir.1978) (notice of appeal was mailed late because of mistake by attorney's secretary as to when the appeal period expired; held not to be unusual or extraordinary circumstances warranting a finding of excusable neglect). The Second Circuit has described the circumstances necessary for a finding of excusable neglect as "unique" or "exceptional" rather than a "run-of-the-mill oversight." Fase v. Seafarers Welf. & Pension Plan, 574 F.2d 72 (2d Cir.1978) (failure to understand the law or careless omissions do not give rise to a finding of excusable neglect.) The Fifth Circuit has stated "A strict construction of Rule 4(a)(1) necessarily and logically compels us to erect a high threshold in our determination of 'excusable neglect' under Rule 4(a)(5)." Pellegrino v. Marathon Bank, 640 F.2d 696, 698 (5th Cir.1981). The Ninth Circuit has stated that excusable neglect should only be found in "extraordinary" cases. State of Oregon v. Champion, 680 F.2d 1300, 1301 (9th Cir.1982) ("inadvertent mistake in addressing [the envelope for] the notice of appeal was not excusable neglect under Fed.R.App.P. 4(a)(5)"). See also Alaska Limestone Corp. v. Hodel, 799 F.2d 1409 (9th Cir.1986).
 
 
 61
 Despite the fact that Redfield's hasty and neglectful examination of the court file fails to measure up to "unique"[4] circumstances, the Majority holds that the district court did not abuse its discretion in granting the appellant an extension of time to file his notice of appeal. The Majority supports its decision on the basis that: (1) there was some confusion as to the correct docket number for Redfield's case, and (2) Redfield "mistakenly" thought the proper date of the dismissal was April 8 because the dismissal order of April 2 was "stuck to" a minute order of April 8.
 
 
 62
 Although there may have been some confusion as to the docket number assigned to Redfield's case after it was consolidated with the similar case involving Continental Casualty which resulted in the district court's failure to notify Redfield of Judge Leighton's order dismissing his complaint, Redfield's affidavit, which as every first-year law student learns, is "a written ... declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it," Black's Law Dictionary, 54 (5th ed. 1979), makes clear that he succeeded with little effort in discovering Judge Leighton's order dismissing his complaint more than two weeks prior to the deadline for filing his notice of appeal. If Redfield really believed that 17 days was an insufficient time to prepare his notice of appeal, he had more than ample opportunity to move for an extension of time had he been representing his client in a professional lawyer-like manner. Conversely, it is interesting to again point out that the record makes clear that Redfield had no trouble filing his response to Continental Causalty's motion to dismiss within seven days after his case had been transferred to Judge Leighton and docketed under a different number. As Redfield stated in his affidavit:
 
 
 63
 "Numerous times before and after filing my Brief in Response to the Defendant's Motion to Dismiss, I inquired with the docket clerks as to what case number of the Brief should possess. After not receiving a satisfactory answer and seeing that the Minute Order was entered in case number 84 C 3266, I filed my Brief in case number 84 C 3266."
 
 
 64
 Clearly, the confusion concerning the correct docket number for Redfield's case did not interfere with Redfield's ability to learn of motions filed by Continental Casualty or to file responsive pleadings, or to generally prosecute his claim before Judge Leighton. Thus, the docket number confusion appears to be nothing more than a weak attempted after the fact justification for Redfield's careless inattention to detail when he examined the court file for his case on April 15, 1985.
 
 
 65
 The Majority further attempts to justify Redfield's carelessness by accepting Redfield's incredulous assertion that he filed his notice of appeal five days late because he "mistakenly believed that the order had been docketed on April 8, 1985 rather than April 2, 1985, the correct date, because the order dismissing the complaint was somehow stuck to an order setting a date for a status hearing." Majority opinion at 602 (emphasis added). On the basis of the decisions of the Supreme Court and the recent decisions of this court, I am not persuaded that Redfield's inattentiveness as to the dates on the orders in the court file rises to the level of excusable neglect. The Majority holds that Redfield's mistake as to the correct date of the decision coupled with the clerk's failure to notify Redfield of the decision supports a finding of excusable neglect. Although the court's failure to notify Redfield of the order dismissing his complaint might excuse his failure to timely file his notice of appeal had he not learned of the court's order on his own prior to the deadline for filing the notice, here Redfield had full knowledge of the order in ample time to file his notice but carelessly examined the record and thus incorrectly recorded the date the order was entered. Thus, we cannot say that but for the court's failure to notify Redfield of Judge Leighton's order, Redfield would have been apprised of the correct deadline for filing his notice of appeal. Rather, but for Redfield's hasty and careless examination of the order, he would have properly calculated the deadline for filing his notice of appeal.
 
 
 66
 To support its finding of excusable neglect, the Majority cites several cases where excusable neglect was found where there was no notice of the entry of judgment and the appellant had made some effort, although unsuccessful, to ascertain the status of his case. But in the cases cited by the Majority, it was not the intervening carelessness of the appellant that was ultimately responsible for the untimely filing of notice or motions. These cases support the well-established principle that excusable neglect should be found only when "unique" or extraordinary circumstances exist. The excusable neglect standard is intended to be "narrowly construed." See Reinsurance Company of America, Inc. v. Administratia Asigurarilor De Stat, 808 F.2d at 1251. The Majority has now expanded the scope of excusable neglect to include mere carelessness on the part of an attorney. This is clearly not the intent of Fed.R.Civ.P. 4(a)(5) and is clearly distinguishable from our recent cases finding excusable neglect. For example, in Passarella v. Hilton International Co., 810 F.2d 674 (7th Cir.1987), we found excusable neglect where the defendant had mailed the plaintiffs complaint to its insurance carrier but no answer was filed by the insurance carrier's attorney because he never received the complaint in the mail nor did he have any knowledge that a complaint had been filed. As a result, default judgment was entered against the defendant. We vacated the default judgment finding excusable neglect since the failure of the insurance carrier's attorney to answer the complaint was not the result of any careless conduct by the attorney or his client. Here, unlike Passarella, the attorney had all the information required in his possession for him to file a timely notice when he reviewed the court file. The failure of the attorney to note the correct date was the direct result of his own carelessness.
 
 
 67
 Here, Redfield had been told in open court that a decision would be rendered March 29, 1985. He in fact filed his brief with the proper docket number in response to the appellee's motion to dismiss and thus he knew the docket number prior to his late filing. Despite evidence to the contrary, see supra, note 2, Redfield claims he first learned of the dismissal on April 15, 1985, when knowing the district court's decision was overdue, he went to the court and checked the correct file--84 C 3266. He read the order dismissing his suit but failed to make a copy of it. The Majority states that Redfield "mistakenly" wrote down April 8 rather than April 2 because the order dismissing his complaint was "stuck to" another document dated April 2. These facts do not present a situation wherein the attorney, through some force beyond his control, was unable to correctly determine the deadline for filing his notice of appeal. The facts do not establish that Redfield was without fault in failing to timely file his notice of appeal. These facts do establish that Redfield was careless and inattentive and thus guilty of an unexcusable error. He read the order, but he did not see fit to either make an accurate note of it much less photostat it. He noted a date for the decision but wrote down the wrong date--a careless clerical mistake, something other courts have not allowed to support a finding of excusable neglect. See, e.g., Alaska Limestone Corp. v. Hodel, 799 F.2d 1409 (9th Cir.1986); Airline Pilots in Service of Executive Airlines, Inc., 569 F.2d 1174 (1st Cir.1978). Even though the orders may have been somehow "stuck together," it is not expecting too much of a trained professional attorney to carefully examine the record and note the caption on the order in recording the date of entry. As an attorney and an officer of the court, Redfield should certainly have understood the importance of obtaining accurate information concerning filing deadlines and the dates of court orders--at least well enough to take the extra five seconds it would have taken to make sure the date he wrote down was correct.
 
 
 68
 Timing provisions, such as Fed.R.App.P. 4(a), give litigants a reasonable time to file motions, notices of appeal, etc. In Reinsurance Company, we stated "The rationale for insistence upon the timely filing of a notice of appeal is 'the necessity for providing a precisely ascertainable point of time at which litigation comes to an end.' " 808 F.2d at 1253-54 (citing Files v. City of Rockford, 440 F.2d 811, 814 (7th Cir.1971)). When a time limit expires this should be an end to the litigation. To allow a litigant who misses a statutory filing deadline to file late in the absence of unique circumstances, renders the excusable neglect standard anything but strict and runs contrary to case law.
 
 
 69
 What we have here, is plainly and simply, inexcusable neglect on the part of an attorney. He was made aware at the February 1 status hearing that the decision would be handed down on March 29. On April 15, or possibly earlier, he learned that the trial court had rendered a decision. Redfield checked the case file on April 15, seventeen days or almost two and one-half weeks before the deadline for his notice of appeal, but now states in his self-serving affidavit that he "mistakenly" wrote down April 8 rather than the correct date of April 2 because the judgment order was "stuck to" the order dated April 8. This type of careless and negligent conduct on the part of a legal professional hardly supports a finding of excusable neglect and is more properly a problem for his insurance carrier, not this court. Excusable neglect should be allowed only when there are unique circumstances which are clearly not present in the instant case. It is unreasonable for this court to expect the district courts to move their calendars if we continue to find excuses for attorneys' careless handling of their clients' legal work and at the same time we send out conflicting signals as to what constitutes excusable neglect. Compare Reinsurance Company of America, Inc. v. Administratia Asigurarilor De Stat, 808 F.2d 1249 (7th Cir.1987). I would hold that Judge Duff abused his discretion in granting Redfield an extension to file his notice of appeal. There was inexcusable neglect--careless inattentiveness by a legal professional trained to exercise vigilance and caution in the performance of his responsibilities.
 
 
 70
 The Majority improperly holds that the district court correctly found excusable neglect was demonstrated for the late filing of the notice of appeal. In effect, the Majority's decision makes a mockery of statutory time limitations. I would reverse the trial court since Redfield's neglect amounted to a careless clerical error.
 
 
 
 [1]
 In support of its argument that the district court employed the "good cause" instead of the "excusable neglect" standard, the defendant may be referring to the sentence in the district court's opinion to the effect that plantiff's attorney "appears to have acted in good faith." Levy v. Continental Casualty Corp., No. 84 C 3266, slip op. at 2 (N.D.Ill. Jan. 24, 1986). The good faith behavior of counsel has, however, always been an important factor supporting a finding of excusable neglect, both before and after the 1979 amendment adding the "good cause" standard. See In re Cosmopolitan, 763 F.2d at 514; Feeder Line Towing Serv., Inc. v. Toledo, Peoria & W. R.R. Co., 539 F.2d 1107, 1109 (7th Cir.1976)
 
 
 [2]
 Defendant contends that both Redfield, No. 84 A 0383, and Levy, which had originally been assigned Adversary No. 83 A 2906, were consolidated and placed on District Court Judge Leighton's calendar under civil docket No. 84 C 3266. No. 84 C 3266, however, was assigned to the Levy case on April 17, 1984, more than eight months before Judge Leighton granted the motion for relatedness on December 21, 1984. Although the order granting that motion was entered on the docket sheet for No. 84 C 3266, there was never a formal transfer of case No. 84 A 0383 to No. 84 C 3266. The docket sheet for No. 84 C 3266 nowhere indicates that Redfield or any of the plaintiffs in No. 84 A 0383 were parties to No. 84 C 3266, or that case No. 84 A 0383 was ever officially consolidated with case No. 84 C 3266. A separate docket sheet for No. 84 A 0383 continued to exist after the granting of the motion for relatedness, and our inspection of the record reveals that Adversary No. 84 A 0383 was never assigned a civil docket number
 
 
 [3]
 While concluding that the facts and circumstances presented here are not sufficently "extraordinary" or "unique" to constitute excusable neglect, the dissent does not mention that this Court reviews a district court's determination of excusable neglect under the abuse of discretion standard. See Reinsurance Co. of America v. Administratia Asigurarilor de Stat, 808 F.2d 1249, 1251 (7th Cir.1987) ("This discretionary authority to make a determination as to the existence of 'excusable neglect' ... is not to be disturbed on appeal unless there has been a clear abuse of discretion by the district court."); Files v. City of Rockford, 440 F.2d 811, 816 (7th Cir.1971) ("wide latitude should generally be accorded a district court in determining excusable neglect"). An abuse of discretion occurs "only when no reasonable person could take the view adopted by the trial court." Lynch v. City of Milwaukee, 747 F.2d 423, 426 (7th Cir.1984). Although we might decide the issue of excusable neglect differently if we were meant to do so de novo, under the appropriate standard we cannot agree with the dissent that "no reasonable person" could take the view adopted by Judge Duff here
 
 
 [4]
 The docket sheet in this Court, the briefs filed with this Court, and the record on appeal all indicate that the order being appealed was entered in case No. 84 C 3266 instead of the correct case, No. 84 A 0383
 
 
 [5]
 To counter defendant's contention that the appeal should be dismissed as untimely, plaintiff has advanced several arguments to the effect that the district court's order was not a final appealable order and that the thirty-day appeal period has not yet begun to run. As the plaintiff was the one to initiate the appeal, he is not well served by such arguments. Plaintiff argues that the judgment was not entered in compliance with Fed.Rules Civ.P. 58 and 79(a) because there was no separate judgment document and the order was entered on the wrong docket sheet. We believe that there was substantial compliance with the rules, see Home Fed. Sav. & Loan Ass'n v. Republic Ins. Co., 405 F.2d 18, 25 (7th Cir.1968); Rodgers v. Watt, 722 F.2d 456, 461 (9th Cir.1983), and that plaintiff waived any objection to any technical deficiencies in compliance when he filed his notice of appeal. Banker's Trust v. Mallis, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357
 
 
 [6]
 The plaintiff in National Discount Shoes was an assignee of the named insured, a land trustee, under an insurance policy. The actual issue before the court was whether the defendant insurer had waived the defense that its consent to the assignment had not been obtained when it made payment under the policy to another assignee, Fisher. Fisher had been the sole beneficiary of the land trust which had held the property covered by the policy, and retained a mortgage on the property after she sold it to plaintiff. The court concluded that the insurer had not waived its consent defense by paying Fisher because, as explained further in the text, it was the intent of the original parties to the insurance policy that Fisher's interest in the property, as beneficiary of the land trust, be protected by the policy. Because Fisher retained an interest in the property after the sale by virtue of the mortgage, Fisher was properly paid as an insured under the policy, and not as an assignee. 99 Ill.App.3d at 60-61, 54 Ill.Dec. at 268, 424 N.E.2d at 1171
 
 
 [7]
 Defendant claims that National Discount Shoes should not control the instant case because its holding turned on the fact that there was some ambiguity as to who was actually the named insured under the policy. The named insured was designated as "Pullman Trust and Savings Bank as Trustee under Trust # 7180076 for Hazel M. Fisher." Defendant contends that it was ambiguous from this language whether the trustee or Fisher was the named insured. Consequently, the court construed the provision to include Fisher as a named insured. Defendant argues that in the instant case it is clear that the only named insured was Chicago Title & Trust Co. as trustee under the three trust agreements
 We believe that defendant has misread the holding of National Discount Shoes. The court in that case always assumed that the trustee, and not Fisher, was the named insured. It inferred that Fisher's interest was to be protected under the policy because Fisher's address was given as the address of the named insured, Fisher was the beneficiary of the land trust holding the property covered by the policy, and the trustee was only named as the insured to comply with the Illinois courts' decision in Fray v. National Fire Ins. Co., 255 Ill.App. 209 (1929), affirmed, 341 Ill. 431, 173 N.E. 479 (1930).
 
 
 [8]
 While it is true that title to the property covered by the insurance policies was transferred from the Chicago Title land trusts to the Bank land trusts, that transfer does not affect Redfield's right to seek recovery under the policies on behalf of the trust beneficiary Cairo. Cairo was the sole beneficiary under both sets of land trusts and his insurable interest in the property covered by the policies remained the same even though the name of the titleholder was changed. Furthermore, although defendant's consent to the transfer was never obtained, and it is by no means clear that it was required, defendant cannot rely on its lack of consent to deny recovery to Redfield because merely changing the name of the land trustee in no way increased defendant's risk. See National Discount Shoes, 99 Ill.App.3d at 61-62, 54 Ill.Dec. at 299, 424 N.E.2d at 1172
 
 
 [9]
 We are further convinced that dismissal with prejudice was inappropriate because the principal plaintiff in federal court, John Redfield, the Trustee in Bankruptcy of Anthony Cairo, was never a proper party to the state court proceedings in which Cairo represented himself in his individual capacity
 
 
 [1]
 Redfield initiated the litigation in federal court as an adversary proceeding to a Bankruptcy. After some procedural wrangling the matter was assigned to the district court calendar of Judge Marshall. Continental made a motion dated December 17, 1984 for relatedness to have the litigation transferred to Judge Leighton because it was related to another adversary proceeding which Continental had removed previously from the bankruptcy court. As the Majority notes, there apparently was some confusion as to the docket number for Redfield's case after his case was consolidated with the other case pending before Judge Leighton. However, Redfield's affidavit establishes that he knew the new docket number for his case after it had been transferred to Judge Leighton:
 "Numerous times before and after filing my Brief in Response to the Defendant's Motion to Dismiss, I inquired with the docket clerks as to what case number of the Brief should possess. After not receiving a satisfactory answer and seeing that the Minute Order was entered in case number 84 C 3266, I filed by Brief in case number 84 C 3266 [the docket number of the case pending before Judge Leighton]."
 Indeed, Redfield had no trouble locating the order dismissing his complaint when he checked the court files on April 15, 1985. Thus, the docket number confusion did not prevent Redfield from ascertaining the status of his case nor the date the order dismissing the complaint was entered. What prevented Redfield from ascertaining the correct date was his own carelessness in examining the court file.
 
 
 [2]
 Redfield claims he did not learn of the court's dismissal until April 15. Affidavits submitted by Continental demonstrate that he likely knew of the dismissal of his complaint within ten days of the March 29 ruling. Within the ten days following March 29 affidavits establish that Redfield telephoned counsel for Intercontinental Security Corp. to discuss the dismissal. Affidavits of James Stickles and Raymond Grossman. During this telephone conversation, Redfield broached the subject of the trial court's dismissal order and said that he did not believe he would pursue an appeal of the dismissal. Stickles' affidavit relates to a telephone discussion between he and Grossman, counsel for Intercontinental Security Corp. that established that Redfield likely knew of the dismissal order within ten days of March 29, 1985 in view of the fact the attorneys discussed Redfield's having ten days from March 29 to make a motion for the court to reconsider its dismissal order or to seek to amend its complaint which was dismissed
 
 
 [3]
 The Second Circuit has stated:
 "The purpose behind this time limitation [in Fed.R.App.P. 4(a) ] is to provide a definite point at which, in the absence of a notice of appeal, litigation will come to a close." Fase v. Seafarers Welfare & Pension Plan, 574 F.2d 72, 75 (2d Cir.1978).
 
 
 [4]
 "Unique" is defined as "being without an equal or equivalent; unparalleled." The American Heritage Dictionary (2nd Ed. 1982)